IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JULIAN WYRE,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | CIVIL NO. 13-538-CJP[1] |
| ) | |
| **JAMES N. CROSS,** ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM AND ORDER

**PROUD, Magistrate Judge:**

Petitioner Julian Wyre, federal inmate incarcerated at FCI-Greenville, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the Federal Bureau of Prisons' alleged failure to properly address his request for a transfer to the Chicago Residential Re-entry Center. For the reasons set forth below, the Petition is denied.

# FACTUAL BACKGROUND

Julian Wyre was sentenced on November 6, 2008 to a term of 17 years in prison for possession with intent to distribute cocaine base (Doc. 11-2). His projected release date is February 27, 2022 (Doc. 1-2, p. 4). At all times relevant to this matter, Wyre had a security designation of "medium" and a custody

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (Doc. 16).

classification of "in," which is the second highest custody level within the Federal Bureau of Prisons ("BOP") (Doc. 1-2, p. 7; Doc. 11-3, p. 2). He was designated to FCI-Greenville, a facility that is equipped to provide a level of security and staff supervision commensurate with his custody level (Doc. 1-2, p. 9).

On January 8, 2013, Wyre requested a transfer to the Chicago Residential Reentry Center even though he had approximately nine years remaining on his sentence ("the Chicago RRC") (Doc. 1, p. 2; Doc. 1-2, p. 1).[2] Wyre wanted to be transferred so that he could participate in additional job training, educational programs and drug rehabilitation programs, save money to start a business, and see his family (Doc. 1-1, p. 3).

According to Wyre, his case manager dismissed the transfer request outright because Wyre's release date was not set to occur until 2022 (Doc. 1, p. 2; Doc. 1-2, p. 1). Wyre then filed a request for an administrative remedy (BP-9) with the warden of FCI-Greenville, James Cross (Doc. 1-2, p. 2). Warden Cross denied Wyre's request for a transfer stating:

> In light of the Second Chance Act of 2007 . . . the Bureau of Prisons (BOP) is now considering all inmates for RRC placement, using the new standards allowing a maximum 12 months placement. . . . All inmates will be reviewed for placement approximately 18 to 24 months prior to their release date. You are ineligible for transfer at this time due to your release date.

(Doc. 1-2, p. 4).

Wyre filed an appeal with the BOP's Regional Director (BP-10) (Doc. 1-2, p.

---

[2] RRCs were previously known as Community Corrections Centers ("CCCs"), and are also commonly referred to as halfway houses. The Court uses the designation "RRC" throughout this Order.

5). Wyre complained that he was not requesting a transfer to the RRC under the Second Chance Act, 18 U.S.C. § 3624, but under 18 U.S.C. § 3621(b) (Doc. 1-2, p. 5). The Regional Director denied Wyre's appeal and stated, in part,

> Currently, you are scored as a 16-point medium security level inmate. You are appropriately designated to the Federal Correctional Institution, Greenville, Illinois, a medium security facility commensurate with your security level. As stated in the Warden's response, a transfer to an RRC is not warranted at this time. The RRCs are halfway houses and are only suitable to house inmates that are in transition from the institution to the community.

(Doc. 1-2, p. 7). The Regional Director also reiterated that Wyre would be re-evaluated for RRC placement prior to his release from prison (Doc. 1-2, p. 7).

Wyre filed another appeal, this time with the BOP's Office of General Counsel (BP-11) (Doc. 1-2, p. 8). Wyre stated that he was told a transfer was not currently warranted because RRCs are only suitable to house pre-release inmates (Doc. 1-2, p. 8). Wyre argued that response contradicted § 3621(b) "which states prisoners can be transferred to any facility at any time" (Doc. 1-2, p. 8). When Wyre did not receive a response by the deadline (*See* Doc. 1, p. 3), he filed the instant petition (Doc. 1).

## **DISCUSSION**

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a petitioner is challenging the fact or duration of confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973); *Waletzki v. Keohane,* 13 F.3d 1079, 1080 (7th Cir. 1994). The writ of habeas corpus may be granted where the

defendant is in custody in violation of the Constitution, laws, or treaties of the United States.   28 U.S.C. § 2241(c)(3).

In his habeas petition, Wyre alleges that his request for an immediate transfer to an RRC was denied after The BOP misapplied the Second Chance Act, 18 U.S.C. § 3624(c), even though he was not seeking pre-release placement in an RRC.  Instead, according to him, he was seeking a routine transfer to an RRC under 18 U.S.C. § 3621(b), and therefore he was entitled to have his transfer request assessed on an individualized basis using the factors set forth in that statute.  He claims the BOP never performed an individualized assessment using the requisite factors, and the BOP's actions were contrary to 18 U.S.C. § 3621(b) and violated his due process rights (Doc. 1).   Importantly, Wyre is only challenging the manner in which the BOP denied his transfer request (Doc. 12).  He is not challenging the policy or the rules behind the BOP's decision (Doc. 12).

The Court is dubious regarding its jurisdiction to entertain this petition and whether a habeas action is the appropriate method for Wyre to bring his claim.  However, even if Wyre's claim was properly brought, it is meritless and his petition would still be denied.

**A.    The Court Lacks Subject Matter Jurisdiction Over the Petition Under 28 U.S.C. § 2241**

While the parties have not addressed the issue of the Court's jurisdiction over the action, the Court must do so as a threshold matter.   *Bunn v. Conley*, 309 F.3d 1002, 1006–07 (7th Cir. 2002) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 500

(1973) (dismissing § 1983 claims that should have been brought as petitions for writ of habeas corpus)).

A petition for a writ of habeas corpus is the proper vehicle for a prisoner's claims if the prisoner is challenging the fact or duration of his confinement, and seeking an immediate or speedier release. *See* 28 U.S.C. § 2241(c)(3); *Preiser*, 411 U.S. at 500; *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 138 (7th Cir. 1995) ("Typically the writ of habeas corpus is used to completely free an inmate from unlawful custody.") On the other hand, if a prisoner is challenging the conditions of confinement, then a civil rights action is the proper vehicle for his claims. *Preiser*, 411 U.S. at 499.

In *Graham v. Broglin*, the Seventh Circuit provided guidance to determine whether the appropriate remedy for a prisoner is a habeas corpus action or a civil rights action:

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy. *But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law*, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.

922 F.2d 379, 381 (7th Cir. 1995) (emphasis added).

Put differently, if the prisoner is not seeking release, or release is not

available as a remedy to the prisoner's claims, then "his challenge can only concern the conditions of his confinement . . . not the fact of his confinement. As such, he may not proceed with a habeas petition." *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005). *See also Pischke v. Litscher*, 178 F.3d 497, 499 (7th Cir. 1999) (holding habeas corpus is the proper vehicle for presenting a claim "only if the prisoner is seeking to 'get out' of custody in a meaningful sense.") Based on the distinction outlined in *Graham*, the Seventh Circuit has held that habeas corpus was not the proper vehicle to challenge the denial of a request for work release, a routine transfer between prisons, or a change in housing quarters within a prison. *Pischke*, 178 F.3d at 500–01; *Falcon*, 52 F.3d at 139; *Adams v. Beldsoe*, 173 F. App'x 483, 484 (7th Cir. 2006). These challenges were more akin to a civil rights action seeking a different program, location, or environment than to a habeas corpus action seeking a quantum change in level of custody.

Here, Wyre's challenge also falls on the civil rights side of the line. According to Wyre, he is challenging the BOP's decision regarding a routine transfer request, and the manner in which it was made (Doc. 1; Doc. 12). He asks the Court to order the BOP to transfer him to the Chicago RRC (*See* Doc. 12). He is not requesting outright release, and release is not an available remedy.[3] Clearly, Wyre is not challenging being in custody, but only the location in which he is in custody, and therefore his challenge can *only* concern the conditions of his

---

[3] The only thing the Court could possibly do in this situation is order the BOP to reconsider Wyre's transfer request. However, even if the BOP granted the request, Wyre would not be released from custody, nor would the duration of his custody be shortened. Wyre would still be serving the same amount of time, but in a different location

confinement. Habeas corpus is not the proper vehicle for such a challenge.

A habeas corpus action is also inappropriate here because Wyre does not contend that his custody is unlawful. Instead, he claims only that the BOP failed to discharge a statutory duty to consider him for transfer to an RRC. "Section 2241 does not permit review of prison and parole decisions after the fashion of the Administrative Procedure Act; a prisoner seeking relief under § 2241 must demonstrate that the custody is unlawful, and not just that an administrative official made a mistake in the implementation of a statute or regulation." *Bush v. Pitzer*, 133 F.3d 455, 456–57 (7th Cir. 1997).

That being said, District Courts within the Seventh Circuit, including the Southern District of Illinois, have reached the opposite conclusion and allowed federal prisoners to bring similar claims in § 2241 petitions. *See, e.g.*, *Moody v. Rios*, Case No. 13-cv-1034, 2013 WL 5236747, at *1 n.1 (C.D. Ill. Sept. 17, 2013) (holding § 2241 is the proper way to challenge denial of inmate's request to be placed in a halfway house for more than six months); *Feazell v. Sherrod*, Case No. 10-cv-901, 2010 WL 5174355, at *1 (S.D. Ill. Dec. 16, 2010) ("[T]he Seventh Circuit has recognized that a § 2241 petition is a proper vehicle by which to challenge the BOP's decisions about inmate placement, though not to challenge BOP policies governing such placement."); *Pence v. Holinka,* Case No. 09–cv–489, 2009 WL 3241874, at *1 (W.D. Wis. Sept. 29, 2009) (holding § 2241 is the proper way to challenge BOP's decision to place inmate in a halfway house for only six months); *Woods v. Wilson*, Case No. 09-cv-0749, 2009 WL 2579241, at *1 (N.D. Ill. Aug. 19,

2009) (holding § 2241 is the proper way to bring claim that "BOP has not correctly used the criteria set forth in 18 U.S.C. § 3621 to determine his placement into a halfway house").

Therefore, assuming arguendo that Wyre's claim is cognizable under § 2241 and the Court may exercise jurisdiction over the petition, Wyre's claim would nevertheless fail on the merits.

### B. Wyre Is Not Entitled to Habeas Relief on the Merits of His Claim

To obtain habeas relief, a federal prisoner must show he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Wyre has not made this showing with respect to either.

#### 1. Statutory Background

Wyre's claims implicate the two statutes which govern the BOP's authority to place an inmate in an RRC: 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Under 18 U.S.C. § 3621(b), the sole authority to designate the place of confinement for federal prisoners has been delegated to the BOP. 18 U.S.C. § 3621(b). The BOP also has the authority to transfer a prisoner from one penal or correctional facility to another "at any time." *Id.* The BOP is given broad discretion to designate any penal or correctional facility that is available, appropriate, and suitable. *Id.* Initial placement and transfer determinations must be made with regard for the five factors listed in § 3621(b): (1) the resources of the facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the

prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 944(a)(2) of title 28. 18 U.S.C. §§ 3621(b)(1)–(5); 28 C.F.R. § 524.11.

Under the second statute, 18 U.S.C. § 3624(c), known as the Second Chance Act, the BOP is charged with preparing prisoners who are approaching the end of their sentences for re-entry into society. *See* 18 U.S.C. § 3624(c). Under § 3624(c), the BOP is obligated to consider placing an inmate in an RRC during the final portion of their sentence for up to twelve months. *See* 28 C.F.R. § 570.22. Again, this determination must be made in a manner consistent with the five factors in § 3621(b). 18 U.S.C. § 3624(c).

Here, Wyre is years away from the completion of his sentence, and therefore § 3621(b) governs the BOP's authority to consider his request for an immediate transfer to the Chicago RRC. *See, e.g., Sacora v. Thomas*, 628 F.3d 1059, 1062 (9th Cir. 2010) ("[Section 3621(b)] governs the BOP's authority in cases where a prisoner who has more than a year left to serve of his or her prison sentence requests a transfer to such a facility.")

### 2. Analysis

At the outset, to the extent Wyre is claiming the BOP's denial of his transfer request violated the Constitution, specifically his right to due process, it is clear that such a claim must fail. "It is axiomatic that before due process protections can apply, there must first exist a protectible liberty or property interest." *Solomon v.*

*Elsea*, 676 F.2d 282, 284 (7th Cir. 1982). However, Wyre does not have a liberty interest in obtaining a transfer to a facility more desirable to him, such as the Chicago RRC. Congress has given the BOP full discretion in determining the placement of federal prisoners. *See* 28 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment.") To that end, the Supreme Court has made it abundantly clear that a prisoner has no constitutional right to select a particular correctional facility for his placement or to be transferred to a different facility upon request. *Olim v. Waukinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Without a protectable liberty interest, Wyre cannot claim that he was deprived of his right to due process when his request for a transfer was denied.

Additionally, to the extent Wyre is claiming that the BOP's denial of his transfer request was contrary to federal law and the individualized factors set forth in 18 U.S.C. § 3621(b), any such claim must fail. Wyre has made no showing that the BOP acted in a manner inconsistent with the law in connection with his case.

The crux of Wyre's claim is that, under § 3621(b), he was entitled to an immediate, individualized evaluation considering the five factors as soon as he made his transfer request. However, nothing in the language of § 3621(b) suggests that is true. In fact, some courts have held that the BOP is not required to consider the factors unless and until it decides to transfer an inmate; only then the factors should be considered in selecting the facility. *See, e.g., Muniz v. Sabol,* 517 F.3d 29, 36 n.14 (1st Cir. 2008), *cert. denied,* 555 U.S. 853 (2008) (holding that §

3621(b) factors need not be considered until the BOP has decided to transfer a prisoner because "Congress surely did not intend" that "the BOP would never be free to decline a transfer request without considering the five factors"); *Sanz v. United States*, Case No. 07-61596-CIV, 2008 WL 1820641, at *3 (S.D. Fla. Apr. 23, 2008) ("[W]hile a prisoner is free to apply for a transfer at any time, the BOP is not required to review such an application under § 3621(b)."); *Rodriguez-Calderon v. Lindsay*, Case No. 3:05-CV-2640, 2007 WL 2756878, at *1 (M.D. Pa. Sept. 20, 2007) ("An inmate simply cannot trigger the consideration of prison placement factors by asking for a transfer because an inmate has no right to be housed in any particular prison.")

But certainly, inmates are not entitled to an "on-demand" individualized assessment of their transfer requests at all times of the inmates' choosing. To suggest otherwise is preposterous. As the Eighth Circuit explained

> [A]n inmate is [not] entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in § 3621(b), whenever the inmate chooses to make such a request. Taken to its logical conclusion, the argument advanced by the inmates would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility, and to deny such requests only after an individualized consideration of each inmate's request and the five statutory factors. . . . Congress surely did not intend such a result.

*Miller v. Whitehead,* 527 F.3d 752, 757 (8th Cir. 2008) (citing *Muniz*, 517 F.3d at 36 n.14). See also *Calloway v. Thomas*, Case No. 08-cv-544, 2009 WL 1925225, at *7 (D. Ore. July 1, 2009) ("[P]etitioner's interpretation could potentially create an unworkable situation for the BOP, requiring it to analyze such requests under §

3621(b) at an inmate's whim.").

Here, although Wyre baldly claims that the BOP denied his request without considering the five factors of § 3621(b), the evidence—particularly the Regional Director's response to Wyre's appeal—speaks to the contrary. The Regional Director explained that Wyre was "scored as a 16-point medium security level inmate" and "appropriately designated to [FCI-Greenville], a medium security facility commensurate with [his] security level" (Doc. 1-2, p. 9). The BOP further stated that his current projected release date was February 27, 2022 and that "[his] case will be evaluated 19 months prior to his release to determine if you warrant RRC placement" (Doc. 1-2, p. 9).

Contrary to Wyre's suspicions, the latter statement it is not an admission that his request for RRC placement was automatically denied because his release date was more than 19 months away. This statement merely explains that, under the Second Chance Act, Wyre will be automatically reevaluated in the future for RRC placement.

The latter statement also indicates that the BOP considered the time remaining on Wyre's sentence—approximately nine years—in making its decision. Under the BOP's current policy, six months in an RRC is normally sufficient to help the inmate re-enter society, and anything "beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement." *See Sacora v. Thomas*, 628 F.3d 1059, 1064 (9th Cir. 2010) (describing the BOP's current policy regarding RRCs); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir.

2010) (same); *Miller*, 527 F.3d at 756 (same). While time remaining on the inmate's sentence is not listed as a statutory factor, it certainly bears on the statutory factors. *Miller*, 527 F.3d at 757. For example, "an inmate serving a lengthy sentence will have a greater impact on the resources of the facility contemplated . . . and placement of such an inmate in an RRC may be in tension with the purposes for which a sentence of imprisonment was determined to be warranted." *Id.*

Additionally, the first statement of the Regional Director's response indicates that the BOP considered Wyre's security designation and custody classification, from which it assessed the resources and appropriateness of the requested facility. The BOP concluded that an RRC was not commensurate with Wyre's current custody level. Under the BOP's inmate classification system, Wyre is a medium security level inmate with "In" custody, (Doc. 1-2, p. 7; Doc. 11-3, p. 2), and requires the second highest level of security and staff supervision" (Doc. 11-5, p. 4). Therefore, Wyre was not eligible for work details or programs outside the institution's secure perimeter," including community confinement in an RRC which is the lowest custody level with the lowest level of security and staff supervision (Doc. 11-5, pp. 3–4).

Thus the record before the Court demonstrates that the BOP considered the factors set forth in § 3621(b), and in light of that consideration, concluded that a transfer to an RRC was not appropriate or justified. While the BOP did not explicitly reference or explain its rationale with respect to each of the five factors,

nothing in the language of § 3621 requires as much.  *Miller*, 527 F.3d at 758 ("Although the warden's responses were brief, the statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC.")   The Court finds it entirely reasonable that the BOP detailed to Wyre only the key considerations that shaped its good-faith decision and left out mention of the factors that it ostensibly deemed less relevant or less important.  As one court explained, requiring the BOP to analyze each factor in detail to the inmates would "make a mockery of the term 'agency discretion'" and turn the good-faith review requirement into a "mechanical pseudo-process, unduly burden the agency, and invite a flood of meritless litigation" about the BOP's thought process and the relative importance attributed to each factor.  *Ganim v. Fed. Bureau of Prisons*, Case No. 06-cv-2957, 2006 WL 2847239, at *6 (D. N.J. Sept. 28, 2006).

Based on the foregoing, this Court finds that Wyre has no protected liberty interest in immediate, individualized consideration of his transfer request, and the BOP nonetheless complied with the requirements of the Constitution, § 3621(b), and its own regulations.  Therefore, Wyre has not demonstrated that he "is in custody in violation of the Constitution or laws or treaties of the United States" as required for relief under  28 U.S.C. § 2241.

## **CONCLUSION**

A petition for a writ of habeas corpus is not the proper vehicle for Wyre's

claims, and the Court is without subject matter jurisdiction to entertain his petition.  In the alternative, Wyre's due process claim is meritless because it is not based on a protected liberty interest and the BOP complied with federal law in denying his transfer request.  Accordingly, Julian Wyre's petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**.  This cause of action is **DISMISSED with prejudice**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   January 21, 2014

s/ **Clifford J. Proud**
CLIFFORD J. PROUD
United States Magistrate Judge
